

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EMR:LM
F. #2023R00078

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 14, 2025

<u>By ECF</u>

The Honorable William F. Kuntz II
United States District Judge
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

> Re:    United States v. Justin Dixon
> <u>Criminal Docket No. 23-90 (WFK)</u>

Dear Judge Kuntz:

The government respectfully submits this letter in anticipation of defendant Justin Dixon's sentencing, scheduled for November 21, 2025. On November 15, 2024, the defendant pled guilty before Your Honor to Counts Two and Four of a five-count indictment. Count Two charges the defendant with coercion and enticement of a minor, in violation of Title 18, United States Code, Sections 2422(b). This pertains to a victim, ("Jane Doe"), who was 14 years old at the time of the underlying conduct. Count Four charges the defendant with being a felon in possession of a firearm, in violation of Title 18, United States Code, Sections 922(g).

At the age of 32, the defendant used social media and other methods to establish relationships with potential victims, groom them by emotionally manipulating them, and coerce them to perform commercial sex acts with the defendant acting as their "pimp." In doing so, and as relevant here, the defendant forced Jane Doe—a then 14-year-old minor—into prostitution. He used force, threats of force, and physical and emotional violence against Jane Doe—all for his own financial interest. For the reasons set forth below, the government respectfully submits that, after considering the factors set forth in 18 U.S.C. § 3553(a), the Court should sentence the defendant to a term of imprisonment within the range of 180 months to 210 months, as jointly agreed by the parties in the plea agreement. Such a sentence is sufficient but not greater than necessary, reflects the mitigation evidence presented by the defendant, and is consistent with sentences in comparable cases within this district and nationally.

I.      <u>Factual and Procedural Background</u>

A.      <u>The Instant Case</u>

Since November 2022, the Federal Bureau of Investigation ("FBI") and the New York City Police Department ("NYPD") developed information confirming the defendant was

operating a sex trafficking business in Brooklyn, New York and elsewhere. The investigation revealed that the defendant used social media and other internet applications to establish relationships with potential victims, groomed those victims by conveying a romantic interest in them, manipulated them into performing commercial sex acts, and then effectively enslaved them through acts of force and coercion. PSR ¶ 8. The defendant recruited and manipulated these victims, coercing them to engage in commercial sex for his financial benefit. Id.

On January 26, 2023, the FBI received information from the FBI that a 14-year-old female, Jane Doe, was being forced into prostitution and threatened with violence by the defendant. PSR ¶ 9. That day, law enforcement officers retrieved Jane Doe from a house on Staten Island where she, and other adult females, were being held against their will by the defendant. Id. Further investigation revealed that Jane Doe and the defendant met on the street a few months prior and began exchanging messages on social media on January 22, 2023. Id. The defendant then picked Jane Doe up from her residence and brought her to the house on Staten Island. Id. In the following days, the defendant transported Jane Doe to the Penn Track—an area off of Pennsylvania Avenue in Brooklyn where sex trafficking and prostitution often occurs—and forced her to engage in commercial sex acts with unknown individuals. Id. The defendant directed when, where and with whom commercial sex acts would be performed, and resistance to the defendant was met with violence or the threat of violence. The defendant collected and kept to himself all payment for the commercial sex acts. Id.

At the house on Staten Island, the defendant used force and threats of force against Jane Doe to maintain control over her. PSR ¶ 11. On at least one occasion, the defendant slapped Jane Doe, stating he did not like the way she was looking at him. Id. The defendant enslaved Jane Doe and other females residing in the house, forcing them to cook, clean, and bathe him. Id. To further maintain control over the victims, defendant prohibited them from wearing clothes while inside the house and controlled their cellphones. Id.

The defendant further abused Jane Doe, calling her "tiny" and overfeeding her to attempt to make her appear older than her age. PSR ¶ 11. He forced her to take unidentified pills to increase her appetite and stated he was arranging for Jane Doe to have plastic surgery—specifically breast implants—to make her look older. Id.

Moreover—and despite being a convicted felon—the defendant was in possession of two firearms and brandished both in the presence of Jane Doe at the house on Staten Island. PSR ¶ 12. On January 26, 2023, the defendant was arrested by the FBI and NYPD. Id. ¶ 13. The defendant has been in custody since then.

On February 28, 2023, a grand jury sitting in the Eastern District of New York returned a five-count indictment, charging the defendant with the sex trafficking of Jane Doe, a minor, using force, fraud and coercion, in violation of 18 U.S.C. §§ 1591(a)(1), 1591(a)(2), 1591(b)(1), 1591(b)(2), and 1591(c), coercion and enticement of Jane Doe, in violation of 18 U.S.C. § 2422(b), sexual exploitation of Jane Doe, in violation of 18 U.S.C. § 2251(a) and (e), and two counts of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

On November 15, 2024, the defendant pled guilty before Your Honor to Counts Two and Four of the Indictment. Count Two charges the defendant with coercion and enticement

of a minor, in violation of Title 18, United States Code, Sections 2422(b).  Count Four charges the defendant with being a felon in possession of a firearm, in violation of Title 18, United States Code, Sections 922(g).

      B.   <u>The Defendant's Criminal History and MDC Infractions</u>

      The defendant's criminal history, summarized in part below, exhibits a concerning pattern of violence and lack of respect for the law.

      On June 5, 2010, the defendant was arrested for a general violation of local law and was found to be in possession of a firearm.  PSR ¶ 48. The defendant received time served for the misdemeanor. <u>Id.</u>  On May 5, 2015, the defendant was arrested for operating a motor vehicle while impaired by drugs, and criminal contempt in the second degree.  PSR ¶ 49.  Law enforcement officers observed the defendant operating a vehicle and swerving into a bus lane. <u>Id.</u> When officers stopped the vehicle, there was a strong odor of marijuana, and one of the female passengers was found to have an active order of protection against the defendant, which the defendant was in violation of.  <u>Id.</u>

      On May 12, 2017, the defendant was arrested for criminal possession of a firearm.  PSR ¶ 52.  Law enforcement officers recovered a stolen loaded .380 Taurus firearm from the defendant. <u>Id.</u>  Additionally, on September 6, 2018, the defendant was yet again arrested for criminal possession of a firearm.  PSR ¶ 53.

      Moreover, while in custody at the Metropolitan Detention Center ("MDC"), the defendant has received several charges and sanctions.  PSR ¶ 70.  These charges include refusing work assignment, possession a dangerous weapon, possessing a dangerous tool, and assaulting without serious injury. <u>Id.</u>  Perhaps even more concerning, on or about April 19, 2024, the defendant posted a video recorded from a cellphone at the MDC on his Instagram account in which he shows himself and other inmates engaging in what appears to be the use of controlled substances.  <u>See</u> Exhibit A.  Furthermore, in or about November 2023 and January 2024, the defendant made various calls to multiple individuals via an MDC recorded telephone line.  In the recorded conversation, the defendant discussed with the individuals the defendant's interest in smuggling narcotics or contraband into the MDC, as well as potentially selling narcotics once he gets out of prison.[1]

      II.   <u>Guidelines Calculation</u>

      The government largely agrees with the Guidelines calculation set forth by

---

[1]     For example, on or around November 22, 2023, the defendant spoke with a female by the name "Candele" and told her, in part, "I learned so much shit in here talking to [n*****s].  I can't talk about it on the phone but they tell me what they did wrong and when I get out of here I made some crazy connects.  [N*****s] need to be ambitious. […]  Go look.  You'll find it. […]  Go get some coke.  I don't want to talk like this on the phone.  That's all you gotta do.  You would never go broke again, never be broke.  All the white people partying…Wall Street, go by bars.  Oh my God."  (This recording was previously produced to the defendant and Bates stamped JD001911).

Probation in the PSR, which except as outlined below, is the same as that calculated by the parties in the plea agreement.

**Count Two – Coercion and Enticement of a Minor (18 U.S.C. § 2422(b))**

| | |
|---|---|
| Base Offense Level (U.S.S.G. § 2G1.3(c)(3); 2A.1(2))[2] | 30 |
| Plus:   Offense involved conduct described in 18 U.S.C. § 2241(a) or (b) | +4 |
| Plus:   Victim's age was between twelve and sixteen years (U.S.S.G. § 2A3.1(b)(2)(B)) | +2 |
| Plus:   Use of an interactive computer service (U.S.S.G. § 2A3.1(b)(6)(B)) | +2 |
| Minus: Acceptance of Responsibility (§§ 3E1.1(a), 3E1.1(b)) | <u>-3</u> |
| Total: | <u>35</u> |

**Count Four – Felon in Possession of a Firearm** (18 U.S.C. § 922(g))

| | |
|---|---|
| Base Offense Level (U.S.S.G. § 2K2.1(a)(6)) | 14 |
| Plus:   Altered or obliterated serial number (U.S.S.G. § 2K2.1(b)(4)(B)(i)) | +4 |
| Total: | <u>18</u> |

**Adjusted Offense Level**                                                                              <u>35</u>

Based upon a total offense level of 35 and a criminal history category of III, the applicable Guidelines range of imprisonment is 210 to 262 months.

Additionally, there is a statutorily imposed ten-year mandatory minimum term of imprisonment for Count Two.

III.    A Sentence of Imprisonment Between 180 to 210 Months is Appropriate

For the reasons set forth below, the government respectfully submits that the defendant should be sentenced to a term of imprisonment between 180 to 210 months.

A.    Legal Standard

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the

---

[2]    The PSR appears to erroneously use U.S.S.G. § 2G1.1, which applies to "promoting a commercial sex act by other than a minor." The parties relied on § 2G1.3 in the plea agreement, which applies to minors. However, both sections invoke a cross-reference to § 2A3.1, which results in the same offense level.

Guidelines were no longer mandatory, but should be considered in conjunction with the factors outlined in § 3553(a). Thereafter, the Supreme Court confirmed that § 3553(a) requires a sentencing court to give respectful consideration to the Guidelines, but Booker allows the court to "tailor the sentence in light of other statutory concerns[.]" Kimbrough v. United States, 552 U.S. 85, 101 (2007) (citing Booker at 245-46 and Gall v. United States, 552 U.S. 38, 46-49 (2007)). However, the Supreme Court explained that even though the Guidelines are now advisory, "district courts must treat the Guidelines as the 'starting point and the initial benchmark'" when determining a defendant's sentence. Kimbrough at 108 (citing Gall at 50 and Rita v. United States, 168 L. Ed. 203, 213 (2007)).

With the Guidelines as the "starting point and the initial benchmark," the Court should next consider the factors set forth by Congress in § 3553(a). Id. That statute provides that a Court should consider a number of factors when determining a defendant's sentence, including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and

> (2) the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.] 18 U.S.C. §§ 3553(a)(1) and (2).

As set forth below, in connection with the analysis of the § 3553(a) factors, the nature and circumstances of the offense—in conjunction with the need to deter both the defendant and others from engaging in the violent and socially-destructive conduct such as that here, which targeted the most vulnerable members of the community—overwhelmingly weighs in favor of a substantial sentence for this particular defendant, who preyed on children, coercing Jane Doe to engage in commercial sex acts for his benefit, and abused her physically, sexually and psychologically.

B. Analysis

In light of the sentencing factors set forth by Congress in § 3553(a), the government respectfully submits that a sentence of 180 to 210 months in prison is warranted in this case.

As an initial matter, with respect to § 3553(a)(1), the nature and circumstances of the instant offense are reprehensible. The immediate and long-term damage caused to victims of this conduct is hard to comprehend. The defendant intentionally recruited and groomed Jane Doe—a 14-year-old girl—for prostitution. He took advantage of a vulnerable minor, preying on her weaknesses for his own financial benefit. The defendant took the victim from her place of residence to Staten Island, where she became reliant on him for necessities. He forced her to engage in commercial sex acts—to which she as a minor could not consent—on the Penn Track.

5

The defendant maintained control over his victims through violence, slapping Jane Doe when she looked at him the wrong way, and brandishing his illegally possessed firearms in front of Jane Doe while also controlling every aspect of her life. This physical and emotional violence instilled fear in Jane Doe, forcing her to perform commercial sex acts solely for the defendant's financial gain, which profoundly damaged her.

The defendant also psychologically and sexually abused his victims, turning them into domestic servants in his home. For example, the defendant forced Jane Doe and other women to cook, clean, and bathe him, while stripping them of their dignity by forbidding them from wearing clothing while in the house. PSR ¶ 11. Further—and unlike what he now claims in his sentencing submission—the defendant was clearly aware of Jane Doe's age, as he engaged in conduct to make her appear older. Id. He forced Jane Doe to take unknown pills to increase her appetite so she could gain weight, overfed her, and made plans for her to undergo plastic surgery. Id. He called her "Tiny." This disregard for the age of his victim highlights the unacceptable nature of the defendant's conduct and the need for a substantial custodial sentence.

The defendant's history and characteristics likewise weigh in favor a substantial sentence. The defendant has a long criminal history, including convictions starting in 2010. PSR ¶ 48. Despite conditional discharges and periods of incarceration, the defendant continued to engage in criminal activity that escalated to trafficking a minor—one of the most serious federal crimes. Thus, the defendant has demonstrated by his prior actions and the instant offense, that he continues to commit crimes that harm others.

Section 3553(a)(2), which emphasized the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment for the defendant, likewise weighs in favor of a substantial sentence. As previously noted, sex trafficking of minors is among the most serious of crimes, and the defendant's deliberate conduct stripped Jane Doe of the safety, dignity and trust that any minor deserves. The gravity of this harm to both Jane Doe and our society cannot be overstated.

Finally, the need for the sentence imposed to promote respect for the law, and promote general deterrence, likewise supports a substantial sentence. Child sex trafficking is a pervasive and underreported crime, and one of the most complex forms of child exploitation. Thus, a lengthy sentence in this case would send a strong message to those who seek to exploit children by forcing them to engage in commercial sex acts, that federal courts will not tolerate trafficking and that the consequences for such criminal conduct will be significant. Pursuant to § 3553(a)(2)(D), it is imperative that the sentence imposed protect the public from the further crimes of the defendant, which will most effectively be done when he does not have access to minors and cannot continue to engage in a life of crime. The government respectfully submits that a sentence of imprisonment between 180 to 210 months is sufficient, but not greater than necessary, to convey the seriousness of exploiting a child for profit. Anything less would fail to reflect the profound moral and legal wrong inherent in trafficking a minor.

IV.    Conclusion

The defendant is dangerous, manipulative and deeply harmed the most vulnerable members of our society. The level of physical and psychological violence used by the defendant

against Jane Doe supports a significant sentence. Considering the mitigating evidence put forth in the defendant's sentencing submission and balancing it with the deeply disturbing nature of the crimes committed by the defendant, the government respectfully submits that a sentence of imprisonment within 180 to 210 months is appropriate in this case.

<div style="margin-left:40%;">

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

</div>

By:      /s/ Lorena Michelen
           Lorena Michelen
           Assistant U.S. Attorney
           (718) 254-6475

cc:   Clerk of the Court (by ECF and e-mail)
      Mia Eisner-Grynberg (Defense Counsel) (by ECF and e-mail)
      Nicole Gervase, Probation Department (by e-mail)