UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

   v.

JUSTIN DIXON,

     Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
23-CR-90 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On November 15, 2024, Defendant pled guilty to guilty to Counts Two (2) and Four (4) of a five-count Indictment, charging him with Coercion and Enticement of a Minor in violation of 18 U.S.C. § 2422(b), and being a Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). Plea Agreement ¶ 1, ECF No. 35. The Court now sentences Defendant and provides a complete statement of reasons, under 18 U.S.C. § 3553(c)(2), of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is sentenced to 180 months' imprisonment, followed by 5 years' supervised release with both the standard and special conditions of supervision; forfeiture as set forth in the Order of Forfeiture; and a $200.00 mandatory special assessment.

## I. BACKGROUND

Defendant is responsible for sex trafficking several women and one minor girl near the Penn Track, a location notorious for prostitution in East New York, Brooklyn. *See* Sealed Presentence Investigation Report ("PSR") ¶¶ 5, 6, ECF No. 38. Defendant used social media to form relationships with his potential victims, groomed them, and manipulated them into working for him as prostitutes. *Id.* ¶ 8.

On January 22, 2023, Defendant exchanged messages with Jane Doe, picked her up, and took her to a house in Staten Island (the "Staten Island House") to force her to work as a prostitute for his financial benefit. *Id.* ¶ 10. Jane Doe was fourteen years old at the time. *Id.* ¶ 9. Defendant repeatedly took Jane Doe to the Penn Track and forced her to engage in sex acts with unknown individuals for money. *Id.* ¶ 10. Defendant collected the payment each time. *Id.*

Defendant used force and threats of force to maintain control of the women and minor victim at the Staten Island House; for example, he once slapped Jane Doe for looking at him in a way he did not like. *Id.* ¶ 11. To make Jane Doe appear older, Defendant overfed her and gave her pills to increase her appetite. *Id.* Defendant also told Jane Doe he was arranging for her to have plastic surgery, including breast implants, for the same reason. *Id.* While at the Staten Island House, Defendant forced the women and minor victim he was trafficking to cook, clean, and bathe him. *Id.* He prohibited his victims from wearing clothes in the house and tracked their phones. *Id.*

On January 26, 2023, members of the Federal Bureau of Investigation ("FBI") and New York Police Department ("NYPD") rescued Jane Doe from the Staten Island House. *Id.* ¶ 9. The officers found Defendant there with several women. *Id.* Later, officers discovered Defendant possessed two guns—one of which was an automatic pistol with a defaced serial number—that he brandished in front of the women and girl at the Staten Island House, including Jane Doe. *Id.* ¶¶ 12–13.

*Procedural History*

On February 3, 2023, the Government brought a Complaint against Defendant for Sex Trafficking of Children or by Force, Fraud, or Coercion in violation of 18 U.S.C. § 1591. Compl., ECF No. 1. On February 28, 2023, a grand jury returned a five-count Indictment charging Defendant with one count of Sex Trafficking of a Minor, one count of Coercion and Enticement of a Minor, one count of Sexual Exploitation of a Minor, and two counts of Felon in Possession of a Firearm. Indictment, ECF No. 8.

On November 15, 2024, Defendant pled guilty to Counts Two (2) and Four (4) of the Indictment, charging him with Coercion and Enticement of a Minor in violation of 18 U.S.C. § 2422(b), and being a Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1).

## II.  LEGAL STANDARD

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553. Together with 18 U.S.C. § 3553, the United States Federal Sentencing Guidelines operate as the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.* The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among similar defendants found guilty of similar conduct; and

(7) the need to provide restitution to victims of the offense. *See* 18 U.S.C. § 3553(a). The Court now addresses each factor in turn.

### III.   ANALYSIS

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

##### 1. *Family and Personal Background*

Defendant was born on October 30, 1990, in Brooklyn, New York. PSR ¶ 63. His mother abused crack cocaine during her pregnancy, and Defendant tested positive for the drug at birth. *Id.* ¶ 65; Def. Sent'g Mem. at 3, ECF No. 48. Defendant never met his father. PSR ¶ 63. Defendant has a maternal half-sibling who resides in Queens, New York; she is not supportive of him because she does not approve of Defendant's lifestyle. *Id.* ¶ 64.

Defendant's childhood was tumultuous and traumatic. Defendant was primarily raised by his maternal aunt, who abused alcohol, and his maternal grandmother. *Id.* ¶ 65. Defendant and his sister recall their mother often coming home high. Def. Sent'g Mem. at 3. When Defendant was six, he and his family were kicked out of his grandmother's residence because his mother stole his grandmother's wedding ring. PSR ¶ 65. Defendant later moved to North Carolina with his grandmother, where he lived for three years until his grandfather's unexpected death caused Defendant's grandmother to return to New York. *Id.*; Def. Sent'g Mem. at 3. After moving back to New York, Defendant was raised by his aunt, whom he felt "genuine[ly] love[d]" him. PSR ¶ 65.

Defendant experienced poverty throughout his childhood, which Defendant reports led him to selling and using controlled substances. *Id.* When Defendant's grandmother learned of

4

his conduct, she kicked Defendant out of her house. *Id.* He lived in a motel in New Jersey for six months, before moving into his friend's roach and rat-infested apartment. *Id.*; Def. Sent'g Mem. at 3. By the age of 19, Defendant was in and out of the criminal justice system. Def. Sent'g Mem. at 3.

Defendant has a one-year-old son from a prior relationship, whom he has never met. PSR ¶¶ 66–68. He is currently single. *Id.* ¶ 66. Prior to his incarceration, Defendant lived with a former girlfriend who is not his son's mother. *Id.* ¶ 69.

2. *Educational and Employment History*

Defendant attended John Dewey High School for one semester, dropping out before he completed the tenth grade due to gang activity. *Id.* ¶ 85. Defendant obtained his high school diploma on December 25, 2013. Third Addendum to the PSR, ECF No. 47. From March 2014 to August 2017, Defendant attended Kingsborough Community College in Brooklyn. PSR ¶ 84. Defendant dropped out due to his arrest for a prior conviction. *Id.*

From 2016 to 2021, Defendant was the sole owner of a luxury rental vehicle business. *Id.* ¶ 87. He does not report any other employment information. *Id.* ¶ 86.

3. *Prior Convictions*

Defendant's criminal history includes prior convictions for General Violation of Local Law, Operating a Motor Vehicle While Impaired by Drugs, Criminal Mischief: Intent to Damage Property, Aggravated Operation of Motor Vehicle in the Third Degree, and Criminal Possession of a Firearm (x2). *Id.* ¶¶ 48–53.

While incarcerated at the MDC, Defendant has been involved in several disciplinary incidents, including refusing a work or program assignment, possessing a dangerous weapon, possessing a hazardous tool, refusing to obey an order, being in an unauthorized area, and

5

assaulting without serious injury. *Id.* ¶ 70. On April 19, 2024, Defendant posted a video on his Instagram account showing himself and other inmates at the MDC using what appear to be controlled substances. *See* Gov't Sent'g Mem. at 3 & Ex. A. Defendant also made calls via a recorded phone line at the Metropolitan Detention Center ("MDC") discussing his interest in smuggling narcotics or contraband into the prison, and in potentially selling drugs when he gets out of prison. Gov't Sent'g Mem. at 3 & n.1.

4. *Physical and Mental Health*

Defendant has acute embolism and thrombosis of his veins. PSR ¶ 73. In March 2024, while incarcerated at the MDC, Defendant suffered injuries to his shoulder and pinky finger. *Id.* ¶ 74. Defendant is currently awaiting shoulder surgery. *Id.*

Defendant has been diagnosed with anxiety disorder, major depressive disorder, and post-traumatic stress disorder. *Id.* ¶ 77. Defendant reports he has not experienced suicidal thoughts, though he has been placed on suicide watch at the MDC. *Id.* ¶ 78.

5. *Substance Abuse*

Defendant began using marijuana when he was 13 years old, alcohol when he was 16 years old, MDMA when he was 21 years old, and promethazine when he was 28 years old. *Id.* ¶¶ 79–82. Defendant states he was addicted to promethazine. *Id.* But Defendant has not sought treatment for his controlled substance and alcohol use. *Id.* ¶ 83.

6. *Nature and Circumstances of the Offense*

The Court's previous statements address the nature and circumstances surrounding the instant offense. *See supra* Part I.

6

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's conduct, which involved sex trafficking multiple women, including coercing a fourteen-year-old girl to work as a prostitute for his personal enrichment. PSR ¶¶ 7–11. Defendant also kept two guns within reach of his minor victim—even knowing he was prohibited from doing so as a convicted felon. *Id.* ¶ 12. The Court's sentence will deter others from engaging in similar conduct and justly punish Defendant for his crimes. Accordingly, the Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a).

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

For Count Two (Coercion and Enticement of a Minor), Defendant faces a statutory minimum term of ten years' imprisonment and a maximum term of life. 18 U.S.C. § 2422(b). He also faces a statutory minimum term of five years' supervised release and a maximum term of life. 18 U.S.C. § 3583(k). If a condition of supervised release is violated, Defendant may be sentenced to up to five years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(b)(2), (e), (k).

For Count Four (Felon in Possession of a Firearm), Defendant faces a statutory maximum term of fifteen years' imprisonment. 18 U.S.C. §§ 922(g)(1), 924(a)(8). He also faces a statutory maximum term of three years' supervised release. 18 U.S.C. § 3583(b), (e). If a condition of supervised release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(b)(2), (e). Defendant is ineligible for probation on both counts. 18 U.S.C. § 3561(a)(2), (3).

Defendant faces numerous other penalties: a maximum fine of $250,000.00; a special assessment of $5,000.00, pursuant to the Justice for Victims of Trafficking Act; forfeiture in accordance with the signed Order of Forfeiture; and compliance with sex offender notification and registration requirements. 18 U.S.C. §§ 924(d)(1), 3014(a), 3571(b), 4042(c); 21 U.S.C. § 853(p); Plea Agreement ¶ 13. The Court is also required to impose a mandatory special assessment of $100.00 per count pursuant to 18 U.S.C. § 3013(a)(2)(A) for a total of $200.00 in this case.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . [t]he applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

Defendant pled guilty to one count of Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b). Plea Agreement ¶ 1. The applicable Guideline for Coercion and Enticement of a Minor is U.S.S.G. §2G1.3, which provides a cross-reference to U.S.S.G. §2A3.1 where, as here, the offense involved conduct described in 18 U.S.C. §§ 2241(a) or (b). U.S.S.G. §2A3.1 establishes a base offense level of 30 because Defendant was not convicted under 18

8

U.S.C. § 2241(c). Four levels are added because the offense involved conduct described in 18 U.S.C. §§ 2241(a) or (b). U.S.S.G. §§2A3.1(b)(1). Two levels are added because Jane Doe was fourteen (14) years old at the time of the offense. U.S.S.G. §2A3.1(b)(2)(B). Two more levels are added because Defendant used a computer or interactive computer service to coerce Jane Doe to engage in prohibited sexual conduct. U.S.S.G. §2A3.1(b)(6)(B). These enhancements result in a total adjusted offense level of 38.

Defendant also pled guilty to one count of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). Plea Agreement ¶ 1. The applicable Guideline is U.S.S.G. §2K2.1. Because Defendant used a firearm in the commission of Count 2, U.S.S.G. §2X1.1(a) applies. That provision directs the Court to use the base offense level for the substantive offense (Coercion and Enticement of a Minor), plus any adjustments for any intended offense conduct that can be established with reasonable certainty. U.S.S.G. §2X1.1(a). Consequently, the same base offense level and enhancements applicable to Count 2 apply to Count 4, resulting in an adjusted offense level of 38.

One unit is assigned to the group with the highest offense level. U.S.S.G. §3D1.4(a)–(c). Both counts here have an adjusted offense level of 38, so no additional units are added. Three levels are reduced for Defendant's timely acceptance of responsibility under U.S.S.G. §3E1.1(a)–(b). PSR ¶¶ 43–45. This results in a total adjusted offense level of 35.

Probation recommends a bottom-of-the-Guidelines sentence of 210 months' imprisonment; five (5) years' supervised release with special conditions; and a $200.00 mandatory special assessment. Revised Prob. Sent'g Rec. at 1. The Government recommends a sentence of 180–210 months' imprisonment. Gov't Sent'g Mem. at 1. Defense counsel recommends a below-Guidelines sentence of 180 months' imprisonment. Def. Sent'g Mem. at 1.

The Court appreciates the sentencing arguments raised by all parties and has carefully considered each in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Probation directs the Court to the policy considerations in U.S.S.G. §5K2.21, stating Defendant's participation in additional conduct not captured in the Guidelines calculations for the instant offense—possessing a second gun—could constitute grounds for an upward departure. PSR ¶ 18; *see* U.S.S.G. §5K2.21. The Court takes this into consideration, and finding no other policy statements on its own, the Court proceeds to the next § 3553(a) factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Defense counsel argues a "wide range of comparable cases in the Southern and Eastern Districts of New York support [Defendant's] request for a fifteen-year sentence; indeed, his conduct compares favorably to these cases." Def. Sent'g Mem. at 7–8. Defense counsel cites cases involving defendants who sex trafficked multiple minor victims and, in some cases, raped their minor victims. *Id.*; *see, e.g., United States v. Miller*, 16-CR-536 (E.D.N.Y.) (Matsumoto, J.), ECF No. 68 (defendant who "orchestrated the prostitution of at least 12 minors" and "had sex with at least two of the known minor victims" sentenced to 180 months' imprisonment). The Court considers the sentences imposed on other defendants found guilty of sex-trafficking crimes, including the seriousness of their offenses, their own criminal histories, and the relevant specifics of their own cases. For the reasons stated in this

Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). As previously stated, restitution is mandatory with regard to Count Two. 18 U.S.C. § 3663(A). The victim's specific losses are unknown at this time. PSR ¶ 104. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within ninety (90) days after this sentencing to determine the specific amounts owed to Defendant's victim.

## IV.  CONCLUSION

For the reasons set forth above, Defendant is sentenced to 180 months' imprisonment, followed by 5 years' supervised release with both the standard and special conditions of supervision; forfeiture, as set forth in the Order of Forfeiture; and a $200.00 mandatory special assessment. This sentence is sufficient but not greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine given Defendant's inability to pay.

The Court expressly adopts the factual findings of the Sealed Presentence Investigation Report and Addenda thereto, as corrected herein, to the extent those findings are not inconsistent with this opinion.

SO ORDERED.

s/WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: November 24, 2025
      Brooklyn, New York